IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                            3:06cr66/LAC
                                               3:07cv492/LAC/MD

FREDERICK O. JOHNSON

---

## REPORT AND RECOMMENDATION

This matter is before the court upon an amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 264). The government has filed a response (doc. 269) and the defendant has filed a reply (doc. 271). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I. BACKGROUND

Defendant and six others were charged in a two count indictment with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and fifty grams or more of cocaine base. (Doc. 93, count one). Defendant and two of his co-defendants were also charged within knowingly using and carrying or possessing handguns in furtherance of the drug trafficking crime. (Doc. 93, count two).

Represented by appointed counsel Donald Sheehan, Esq.,[1] defendant entered a plea of guilty to both charges in the indictment. (Doc. 267). There was no written plea and cooperation agreement, but the court advised the defendant at rearraignment of the potential for cooperating with the government. The charges were explained to the defendant, the government briefly explained the facts it could prove if the case went to trial and the penalties were explained to the defendant. (Doc. 267 at 9-11, 15-16). Defendant indicated that he understood all of this. (*Id.*)

Over 1.5 kilograms of cocaine base was attributed to the defendant, yielding a base offense level of 38. (PSR ¶ 170). He received a three level downward adjustment for acceptance of responsibility and thus had a total offense level of 35. (PSR ¶ 179). Defendant had ten criminal history category points for juvenile criminal convictions. Thus his criminal history category was V.

Counsel filed written objections to the PSR in which he argued that defendant should have received a two level minor role adjustment, and that defendant's criminal history category was erroneous because criminal history category points should not have been assessed for certain of defendant's juvenile convictions. The latter objection was withdrawn at sentencing, as counsel conceded that the criminal history category had been correctly calculated based on documents provided to him by the probation officer. (Doc. 268 at 3). The court overruled counsel's request that a minor role adjustment be applied to his client. (Doc. 268 at 7). Defendant was sentenced to a term of 294 months imprisonment on count one and a consecutive term of 120 months on count two. He did not appeal.

In the present motion, defendant raises six grounds for relief. The government opposes the motion in its entirety.

---

[1]Defendant was initially represented by E. Brian Lang, who filed a motion to withdraw for conflict of interest due to his representation of Bradford MacClemmy, who had entered a guilty plea in case 3:06cr37/MCR. (Doc. 91 & 92).

*Case No: 3:06cr66/LAC; 3:07cv492/LAC/MD*

## II.  LEGAL ANALYSIS

The grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice.").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  *See  Bousley v. United States,* 118 S.Ct. 1604, 1610 (1998); *United States v. Montano,* 398 F.3d 1276, 1279-1280 (11th Cir. 2004); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)(recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"),  *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error or that he is "actually innocent." *Bousley,* 118 S.Ct. at 1611 (citations omitted); *United States v. Montano,* 398 F.3d 1276 (11th Cir. 2004). In the alternative, a defendant can overcome the procedural bar created by the failure to appeal if he could show a fundamental miscarriage of justice. *Montano*, 398 F.3d at 1280 (citing *Mills*, 36 F.3d at 1055 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986))).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Role Adjustment

Defendant's first ground for relief appears to be that he should have received a two level downward adjustment as a minor participant. This issue could have been raised on

appeal and is therefore procedurally barred.  *Bousley, Montano, supra.*  It is also without merit.

Section 3B1.2 of the Guidelines provides:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a)      If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.

(b)      If the defendant was a minor participant in any criminal activity, decrease by **2** levels.

In cases falling between (a) and (b), decrease by **3** levels.

U.S.S.G. § 3B1.2.  The commentary to the Guidelines makes clear that the determination of mitigating role in the offense "is heavily dependent upon the facts of the particular case."  U.S.S.G. § 3B1.2, comment (n.3(C)).  The defendant has the burden of establishing his role in the offense by a preponderance of the evidence.  *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006) (citing *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999)).  The district court must assess all of the facts probative of the defendant's role in his or her relevant conduct in evaluating the defendant's role in the offense.  *United States v. Boyd,* 291 F.3d 1274, 1277 (11th Cir. 2002) (quoting *United States v. Rodriguez De Varon*, 175 F.3d 930, 943 (11th Cir. 1999)).

According to application note 5 to § 3B1.2, a "minor participant" is a participant who is less culpable than most other participants. It is entirely possible for conspiracies to exist in which there are no minimal or minor participants or for which the least culpable participants, for whatever reason, were not indicted.  *United States v. Rodriguez de Varon*, 175 F.3d 930, 944 (11th Cir. 1999).  In any event, the fact that a particular defendant may be least culpable among those who are actually named as defendants does not conclusively establish that he performed a minor role in the conspiracy.  *United States v. Zaccardi*,  924 F.2d 201, 203 (11th Cir. 1991); *United States v. Cacho*, 951 F.2d 308 (11th Cir. 1992).  The court must look to the entire criminal scheme that produced the crime in question and weigh the relative culpability of all participants in that scheme. *Rodriguez de Varon*, 175 F.3d at 944; *United States v. Cataldo*, 171 F.3d 1316, 1319 (11th Cir. 1999).

The propriety of the minor role adjustment was considered by the court at sentencing after argument by the parties.  Defense counsel argued that his client was only a street level dealer and that his conduct was much less culpable in a relative sense than others,  (Doc. 268 at 3-4, 6-7).  The government responded, moving into evidence as an exhibit a tally sheet that indicated defendant distributed close to $200,000 worth of cocaine and cocaine base during a one and a half year period, arguing that defendant had been found to have guns in his car more than once during the course of the conspiracy, and that he had been captured on video cutting up cocaine for sale.  (Doc. 268 at 5-6).  The court specifically found that defendant was "as culpable as the majority of the people in the offense" and found he was not deserving of a role mitigation.  Defendant has not raised any additional argument that counsel could or should have made that would have altered the court's conclusion in this case.

### Fourth Amendment violation

Defendant claims that his Fourth Amendment rights were violated because the property where the firearm mentioned in count II of the indictment was located was not mentioned in the search warrant.  Defendant explains that 7307 Kennedy Lane branches into 3 adjacent residences and properties. The mobile homes mentioned in the search warrant were described as double wides owned by Josh Nelson Johnson Sr.  Defendant contends that these were the only properties to be searched.  The third mobile home owned by defendant's father was identified as 7307 ½ Kennedy Lane.  Defendant contends that this was the property where firearms, currency and narcotics were seized from an automobile owned by an unnamed individual.

Like the previous claim, defendant's challenge to the constitutionality of the search could have been raised on appeal and is procedurally barred.  *Bousley, Montano, supra.* It is likewise without merit.

The automobile exception to the warrant requirement allows police to search a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search.  *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007) (citing *United*

*States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003)).  All that is required to satisfy the first prong is that the vehicle be operational. *Id.*  Additionally, "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure" or that other "exigent circumstances" exist. *Lindsey*, 482 F.3d at 1293 (quoting *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985)).  Probable cause for the search exists when "under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Id.* (quoting *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006) (citation and internal quotation marks omitted)).  A search warrant was issued for the subject property where the vehicle was parked, (see case 3:06mj86 doc. 5), and defendant has not argued that there was no probable cause to search the vehicle where the contraband was located.

Ineffective assistance of counsel

Defendant contends that he received ineffective assistance of counsel because when appointed counsel Brian Lang withdrew from his case due to conflict of interest, he was in the process of negotiating a plea agreement that would have possibly eliminated Count two.  Defendant contends that Lang's departure foreclosed this possibility.

To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007).  "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing  *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

Counsel moved to withdraw because he represented Brian MacClemmy, which created a conflict of interest with his representation of the defendant.  (Doc. 91, doc. 269 at appx. B).  Counsel reasonably and properly moved to withdraw from his representation of the defendant and the court correctly granted his motion.  *See Wheat v. United States*, 486 U.S. 153, 155, 159-64, 108 S.Ct. 1692, 1694-95, 1697-1700 (1988); *United States v. Campbell*, 491 F.3d 1306, 1309-12 (11th Cir. 2007).  Defendant has failed to show that Lang's withdrawal was tantamount to constitutionally deficient performance.

He has likewise failed to establish prejudice.  Defendant's assertion that Lang was negotiating a plea agreement that would have removed count two is refuted by the affidavits filed by Lang and by Assistant United States Attorney David Goldberg, who prosecuted the case against the defendant. In his affidavit, attorney Lang states that he "can only surmise" that the defendant refers to the plea and cooperation agreement proposed by the government prior to his withdrawal.  (Doc. 269, appx. B).  In accordance with the terms of this proposed agreement which defendant never signed, defendant faced a mandatory minimum of ten years on count one and a mandatory minimum of five years to run consecutively to any sentence imposed in count one.  Counsel states that besides this proposed agreement, "there were no other negotiations or promises made to the defendant."  (Doc. 269, appx. B at 2).

In his affidavit, Assistant United States Attorney Goldberg avers that pursuant to the longstanding policy of that office, he did not engage in plea bargaining and "would not agree to dismiss counts except where such dismissal would have no effect on a defendant's prospective sentence of imprisonment."  (Doc. 269, appx. C).  He goes on to specifically deny negotiating a plea bargain involving a ten year or any specific sentence with Attorney Lang, and states that had such an offer been made, it would have been rejected.  Thus, defendant has failed to show prejudice.

Defendant also appears to contend that attorney Sheehan's representation of him was ineffective because counsel did not discuss the terms of the plea agreement with him, and told him that a plea and cooperation agreement was the only way to secure justice. Defendant's assertions are contradicted by the record of the plea colloquy.  At the

rearraignment, the court inquired about counsel's understanding of his client's wishes with respect to the plea.  Counsel responded:

> Yes, Your Honor.  Judge, if I could briefly tell the Court, the jury trial is set Monday, August 14th.  After many meetings with Mr. Johnson, discussing the evidence with him, discussing the state of the case with him, he does – he has told me that he wants to plead to both counts today.
>
> The government did provide Mr. Johnson with a proposed written plea agreement and Mr. Johnson and I have been through that.  Mr. Johnson, though, states that he would prefer to enter his plea today, but without the benefit of signing that after discussing it with him, but that he does – he tells me that he does want to cooperate with the government and attempt to avail himself of either a 5K1, which I've discussed fully with him the meaning of a 5K1 under the sentencing guidelines, and/or a Rule 35.

(Doc. 267 at 3-4).  The court explained defendant's rights to him, and the fact that he would be waiving these rights if he went to trial.  (Doc. 267 at 7).  Defendant indicated under oath that he understood those rights and had discussed them with counsel.  (*Id*. at 7-8).  The charges were enumerated, the factual basis for the plea was stated in open court, and the possible penalties were explained to the defendant.  He indicated that he understood or agreed with everything that had been explained.  (*Id*. at 9-12).  When the court asked whether defendant had had sufficient time to discuss his case with counsel, he nodded. The court noted that he had hesitated, and asked again whether he had had sufficient time to tell counsel everything he wanted or needed to about the case, and whether there was any advice that he felt that he needed.  (*Id*. at 16). Defendant asked permission to speak with his attorney, which the court granted.  After defendant and counsel concluded their conversation, defendant verified he had told counsel everything he needed to about the facts of the case, stated he was satisfied with counsel's representation of him and had no complaints about the way he had been treated during counsel's representation of him.  (*Id*. at 16-17).  When given the opportunity to modify any of the answers he had given that day, defendant declined.  (*Id.* at 17).

A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent

collateral proceedings.  *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*; United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994*)*.  They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629; *see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing *United States v. Sanderson*, 595 F.2d 1021 (5th  Cir. 1979)); *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997); *United States v. Messino*, 55 F.3d 1241, 1248 (7th  Cir. 1995); *United States v. Mims*, 928 F.2d 310, 313 (9th  Cir. 1991); *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991). Consequently, a defendant "bears a heavy burden to show his statements [under oath] were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988); *United States v. Reid*, 2007 WL 4190403 (11th Cir. 2007) (Table, text in WESTLAW); *United States v. Cardenas*, 230 Fed.Appx. 933, 2007 WL 2119918 (11th Cir. 2007) (Table, text in WESTLAW). "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514, n.4 (11th Cir. 1986) (quoting *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)).  Defendant has not born his burden of showing that he swore falsely, and he has not shown that counsel's performance was constitutionally deficient.  Even if he had not discussed his case with counsel, which he swore under oath that he did, he was fully advised about all aspects of his plea at the time of rearraignment, so he can not show prejudice.

<u>Quantity of Drugs Attributed to Defendant</u>

Defendant claims that the quantity of drugs attributed to him was miscalculated. He contends that an amount well in excess of his involvement was attributed to him.  He

asserts that the information provided by co-conspirator Sharon Dixon was not credible, and that the cocaine base he distributed was of 58 percent purity so the amount should have been reduced accordingly. This claim is both procedurally barred because it was not raised on appeal, and without merit.

As an initial matter, the court notes that the indictment does not address the issue of drug purity: defendant is charged with a conspiracy involving fifty grams or more of a "mixture and substance containing cocaine base." (Doc. 93 at 2). Note A to the Drug Quantity Table in the Sentencing Guidelines provides that "unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c), Note (A). Thus, the fact that the cocaine base sold by defendant may have been of low purity is not relevant to the quantity determination.

In a case where no drugs have been seized, it is proper for the district court to approximate the quantity of the controlled substance. U.S.S.G. § 2D1.1 (n.12); *United States v. Rodriguez*, 398 F.3d 1291, 1297 (11th Cir. 2005); *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996). In estimating the quantity of drugs attributable to a defendant, a court may base its computation on evidence showing the average frequency and amount of a defendant's drug sales over a given period of time. *Id. United States v. Minor*, 227 Fed.Appx. 863, 866 (11th Cir. 2007) (Table, text in WESTLAW). Sentencing is based on "fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant," that may include coconspirator testimony. *United States v. Rodriguez,* 398 F.3d 1291, 1297 (11th Cir. 2005) (citing *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998)). This is what was done in the defendant's case.

The PSR held defendant accountable for "well in excess of 1.5 kilograms of cocaine base." In reaching this amount, the probation officer considered 67.6 grams of cocaine base seized by law enforcement, 336 to 756 grams of cocaine base delivered by Tabitha Dixon, 1,560 grams of cocaine base purchased by defendant and David Johnson, 5,600 grams of cocaine base purchased by David Johnson and Alonzo Johnson as relevant conduct, and defendant's "owe sheets" which confirmed defendant's involvement with over

1.5 kilograms of cocaine base. (PSR ¶ 164). Sources other than Sharon Dixon were used to calculate this quantity, which far exceeded 1.5 kilograms of cocaine base. Defendant has shown no error and he is not entitled to relief.

Juvenile Status

Defendant next contends that he was a juvenile during his entire participation in the charged conspiracy, and presumably takes the position that as a juvenile, he should not have been charged in federal court. This claim could have been raised on appeal, and as such is procedurally barred. Defendant's position is also factually incorrect.

The indictment charged that the conspiracy lasted "between on or about January 1, 2005, and on or about May 16, 2006." (Doc. 93 at 1). Defendant's eighteenth birthday was April 24, 2005. At rearraignment, defendant agreed that the facts as presented by the government, that the conspiracy existed in 2005 and 2006, were true and correct, and that he had participated in this conspiracy. No relief is warranted.

Criminal History Calculation

Defendant contends that two of the criminal history points assessed against him should not have been counted because he was a juvenile. This claim is procedurally barred for defendant's failure to raise it on appeal, and it is without merit.

As noted above, counsel objected to the defendant's criminal history calculation in the PSR, asserting that criminal history category points should not have been assessed for certain of defendant's juvenile convictions. This objection was withdrawn at sentencing, as counsel conceded that the criminal history category had been correctly calculated based on documents provided to him by the probation officer. (Doc. 268 at 3). Defendant was assessed points for five prior juvenile offenses for which he was sentenced to at least 60 days imprisonment, and for which his release from confinement was within five years of his commencement of the offense conduct in the instant case. See PSR ¶¶ 81-185, 236; U.S.S.G. § 4A1.2(d)(2)(A). Thus, defendant has not shown that there was error in the calculation of his criminal history category.

In conclusion, the majority of defendant's claims are procedurally barred.  He has not shown cause for not raising his claims on direct appeal, and either actual prejudice resulting from the alleged error or that he is "actually innocent." *Bousley,* 118 S.Ct. at 1611 (citations omitted); *United States v. Montano,* 398 F.3d 1276 (11th Cir. 2004).  He likewise has not shown a fundamental miscarriage of justice.  *Montano*, 398 F.3d at 1280.  And, with respect to his ineffective assistance of counsel claims, he has failed to meet the two part *Strickland* test, and therefore his motion should be denied.

Based on the foregoing, it is respectfully RECOMMENDED:

The amended motion to vacate, set aside, or correct sentence (doc. 264)  be DENIED.

At Pensacola, Florida, this 30th day of April, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).